The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Thank you, Rachel. Good morning, everybody. Welcome to the Fourth Circuit. We're ready to hear argument on our first case, United States v. Williams. Mr. Compton, we'll be glad to hear from you. Thank you, Your Honor, and may it please the Court. My name is Nicholas Compton, and I represent the appellant in this case, Alan Williams. Mr. Williams is appealing the 327-month sentence of incarceration and the lifetime sentence of supervision imposed on him by the District Court. Mr. Williams contends that the District Court failed to make an individualized assessment of him when imposing both the sentence of incarceration and the sentence of supervision. He further contends that the District Court relied on information that was not provided to him prior to sentencing. And lastly, he contends that the District Court failed to give proper notice that it intended to depart above the high end of the guideline range prior to sentencing. With regard to the first ground, Your Honor, in imposing sentence, the District Court is required for both an incarceration sentence and a supervision sentence to make an individualized assessment of the defendant. The District Court made no such individualized assessment in this case. With regard to the sentence of incarceration, the District Court's explanation as to why it was imposing the 327-month sentence above the high end of the guideline range is totally based on the nature and circumstances of the offense, to the exclusion of the other 3553A factors. Even though those factors were raised in mitigation by Mr. Williams, both in a sentencing memorandum filed prior to the sentencing and at the sentencing hearing itself. Counsel, did you make that specific argument in your brief? About the individualized assessment, Your Honor? Well, I know in general terms you say individualized assessment, but your argument that the court didn't consider specific parts of 3553, is that argument made in your brief? I thought I did, Your Honor. Perhaps it didn't come across in the filings that I did. My intention in the filings was to argue that the court did not consider all of those 3553A factors when both sentencing, incarceration, and supervision. Well, when I read through in the appendix from pages 147 to 150, that seems to be a fairly intensive and specific finding as to the reasons for the sentence. What in particular did you say that the court did wrong here? Well, Your Honor, we raised in the sentencing memo and its sentencing factors, including Mr. Hemelwright's lack of criminal history, his age. We raised certain matters with regard to his childhood. We provided two letters of character letters. We talked about his decades of employment as a firefighter and an EMT, and we provided over 60 pages worth of certificates, thank you letters, commendations. We talked about his mental health, which is... Do you make any of those arguments in your brief? I don't think we specifically referred to those, Your Honor. I think I generally referred to the court's failure to make an individualized assessment on both the sentence of incarceration and the supervision sentence. I don't believe I specifically referenced those specific matters in the brief. Well, the law requires in every case of sentencing that the district court judge make an individualized assessment and go through the 3553A factors in some form. But if there's error, it's incumbent upon the defendant to tell us what exactly the error was. So that's the reason for my questions. Yes, Your Honor, and I certainly understand that. And I can see where the court, just looking at the brief, I can see where the court did not get that. I probably should have been more direct in what I was referring to, as opposed to the generalized individualized assessment. I think the district court neglected to discuss those specific 3553A factors on the sentencing. I think, likewise, on the lifetime of supervision, the district court failed to make, again, an individualized assessment, providing on page 150 of the joint appendix, a one-sentence justification for the lifetime of supervision, which says, lifetime of supervision will also allow the probation office to monitor the defendant's conduct in the community and to ensure his compliance with the sex offender registration requirements and protect the community. Counsel? Counsel? Judge Harris has a question. So I know that before the district court you did ask for five years, but were there any arguments at sentencing actually being made about the length of the sentence, of supervised release? It didn't seem to me, and I'm not casting any fault on anyone, but it just didn't seem as though that was the focus of either the defendant's arguments or the government's arguments at sentencing. And given that there was no specific argument about why the term of supervised release should be five years, I guess I'm wondering what else the district court was obliged to say about it. I think our overall argument, I agree with your honor, I don't think that there was a specific discussion about the full length and breadth of a sentence of supervision. But we did specifically ask for the five-year mandatory minimum, and I think that our arguments that we presented in the sentencing memo at sentencing were in regard to both the sentence of incarceration and the sentence of supervision. We were asking for the mandatory minimums on both. I thought part of your argument at sentencing went to you wanted a lower sentence of imprisonment and implied that a longer term of supervised release would be the appropriate way to keep an eye on the defendant. Is that a fair statement of the argument that was made? I think that probably is fair, your honor, and I've made that argument in the past. But I think that doesn't relieve the court of having to explain why it chose the sentence that it did, and particularly in this case a lifetime sentence of supervision. My suggestion to the court that perhaps a longer sentence of supervision in exchange for a lesser period of incarceration, I don't think under the law allows the court to simply do what it did in this case, which is what it does or had been doing in all of its cases, including the Himmelreich case, which was also before this court, where it simply imposes supervision in these sex offense cases, divides the special conditions into three groups, and then recites the 3553A factors as the justification without specifically applying them to the defendant. Here, even if I had suggested that perhaps a longer sentence might be more appropriate, the court provides no justification as to why, for example, a 10-year sentence of supervision or a 40-year sentence of supervision is more appropriate for this defendant. Judge Rushing has a question. Thank you. On this line, you mentioned that your arguments for a shorter prison sentence and a shorter supervised release term, that they were overlapping. You were making the same arguments about both, why they would apply to both. My question is, in reading the explanation the district court gave, it seems that that was the way the district court also approached it. The sentence is announced, both the incarceration and the supervised release and the conditions, and then the court goes on to explain at some length why this entire sentence is appropriate. Given that the reasons for both were the same in the argument, why shouldn't I read the court's reasoning to apply to the entire sentence, including the supervised release? Certainly, the court can read it that way, I think, if it chooses. I may have presented the argument as combined, but I don't think the district court, in its ruling, meant for that explanation to apply to both. It provided separate, specific explanations in my opinion. What the court said was, the reasons for the sentence, and the sentence includes both the period of incorporation and supervised release, imposed here are as follows. Following Judge Rushing's question, we had a case last year called Arbaugh that recognized exactly the same situation where the district court pronounces the combined sentence and goes through all of the rationales for it that apply to both. Unlike in Arbaugh, there is a specific explanation at the end of the district court's discussion that applies to the lifetime supervision. My question is, why is this case any different from Arbaugh? Your Honor, I think the district court has provided a separate explanation. I appreciate that it refers to just the sentence, but the district court makes a point of providing separate explanation when imposing the special conditions of supervised release. It doesn't announce the standard conditions and then the special conditions and then give its reason. It announces the standard conditions and the special conditions, and then after each three or four special conditions, my time has expired, Your Honor. May I continue? Go ahead and finish up your thought. The court, after three or four special conditions, it stops and gives a reason why those conditions are being imposed on this defendant, except there's no individualized assessment on that. Counsel, I'm sorry, I know you're over time, but are you suggesting, is it possible that we're in, in your view, had the district court not said anything about supervised release, not put in that sentence at the very end saying, here's my sentence, here's my explanation, and then at the end, this one sentence about the length of the supervised release term, if that sentence were out and the sentences, the kind of boilerplate language about the particular conditions were out, then that would be fine. That would be our ball. But because the district court added something specific as to supervised release, now it's not okay? I think in that instance, what the court has done here is by adding that language, has separated its sentence, its explanations out. It has provided, in my view, an explanation for the sentence of incarceration, which is the long discussion that the court has when it imposes a sentence, and then has, yes, your honor, provided these three separate explanations as opposed to, you know, I think what perhaps Judge Agee was suggesting was that when the court said the reasons for the sentence imposed are as follows, I think that refers to the sentence of incarceration when looked in the context of the fact that the court has given separate explanations for the sentence of supervision. All right, thank you, Mr. Compton. You've got some time in rebuttal. Ms. Crockett, we'll hear from you. May it please the court, Kim Crockett appearing on behalf of the appellees. Respectfully, your honors, the appellees disagree with the appellant's arguments in this case, and I'll begin as Mr. Compton did with the first argument, and that's that the district court imposed a variant sentence in this case. As this court is well aware, district courts can consider multiple bases in its decision to vary, and that those decisions can, or considerations can overlap with similar grounds for departure. But in this case, the court did not place more reliance on the departure grounds set forth in the PSR, but in justifying its sentence, relied on many, many factors to warrant a variant sentence above the guideline range. And I'll draw your attention to the fact that the district court, in its explanation for its sentence, never even used the words extreme psychological harm in reaching its determination. While we do believe the court did consider harm done to the minor in this case, it was an extreme psychological harm that was set forth in one of the bases for departure. But even assuming you believe a departure was imposed in this case, the appellant had noticed. There were sections in the PSR that alerted appellant to those grounds. He filed a sentencing memorandum thoroughly arguing against it, and appellant began his arguments on behalf of his client with discussion of those departure grounds. So he was on notice. There's no indication that additional notice would have affected the presentation of his evidence or the ruling of the court. And unlike the court in spring, there were only two grounds of departure that were noticed in the PSR. Appellant also had all of the same information that was available to the government in probation. And I wanted to spend a second talking about what I believe was the red herring in this appeal, which was the appellant's misleading arguments to the court that information was withheld from the defendant that was then used to depart upward. Which, if true, would be concerning. But in this case, neither the United States nor probation withheld anything from the appellant. The United States received an update from the victim's family from the father after the plea was reached, but before we went to sentencing. And that information was provided to the probation office and incorporated within the PSR. And the appellant had it for two months before sentencing. Paragraph 142 in the PSR, in the joint appendix, page 194, is the sum and substance of that information that was considered. So the United States takes issue with the claim that the above guideline sentence was predominantly based on extreme psychological harm of the victim. And that evidence of that condition was withheld from the appellant. And I know there was some significant amount of time in the briefs that discussed that issue. At sentencing, the United States advised the court that during our plea negotiations, the defendant never requested records to support our claim for the restitution. And the government never had the victim's records in its possession. So the government merely requested $20,000 in restitution, which was accepted. And it was a bargain for agreement, quite frankly, your honors. And the defendant received the benefit of it because at the time we'd gone into our plea negotiations and he had signed the plea and had a change of plea hearing, the victim in this case had not been hospitalized, had not been placed in foster care. So had we not reached an agreement as to restitution, we would have had a hearing and likely the restitution figures would have been much higher. And then we probably would have had records that were in our possession that we would have shared. Defendants trying to now in this brief tie the United States comments about what it had in its possession during our plea negotiations to later lay the foundation of the justification for probation, putting extreme psychological harm as a possible departure ground in PSR. There were no records supporting probation's assessment that were in the possession of the government or that were shared with probation. So there was no surprise and there was no prejudice to the appellant in this case. And I know the government never requested a departure on any grounds.  In fact, we asked for a high end guideline sentence consistent with the plea agreement. And the district court, we believe, never imposed the departure sentence. Can I ask you to speak to the question of these conditions on supervised release and whether they were adequately explained and tailored to this defendant? It would be my pleasure, Your Honor. The United States does believe that the district court's approach to sentencing is consistent with our law. A lifetime term of supervised release was within the guideline range in this case, and it was the statutory maximum. And as you are well aware, special conditions must also be consistent with pertinent policy statements that are in the Sentencing Commission, included within the Sentencing Commission. And one of those policy statements includes the provision that a statutory maximum term of supervised release is recommended for those convicted of sexual offenses. And the appellant is a convicted sexual offender who committed hands-on sexual abuse in this case. So unsurprisingly, the court did just that. It imposed a lifetime term of supervised release. And what about the conditions? I'm sorry. The specific conditions? I guess that's my biggest concern about the case, is whether each condition was explained sort of in terms that go to this defendant particularly. Yeah, I believe appellant is trying to draw out one sentence within the court's overarching justification for its sentence. The court spent more than one sentence. It spent roughly five pages, four or five pages, laying a foundation for why it was imposing a sentence in this case. I think maybe if I ask you just a very specific question. So one of the conditions, for instance, is that the defendant can never possess alcohol for the rest of his life. And I can't see anything in the record. If I were to judge whether or not that was reasonably related to the 3553A factors or more restrictive than necessary, I don't really know what I would look to. There doesn't seem to be anything in the record suggesting that there was an alcohol problem, that defendant abused alcohol or was, you know, frequently drunk, or that there was any connection between alcohol and the offenses. So how would I find, if I were to review that, how would I know why the district court imposed it? And, Your Honor, the district court did not, in its justification for its sentence, draw out any particular fact as it related to Mr. Williams and the use of alcohol. And I cannot recall off the top of my head whether or not there was anything in his personal history that was noted in the PSR. But I do think when you're looking at the court sentencing, you have to, you can't just look at one section of the sentencing. You have to look at the court's entire sentencing hearing as a whole. And when looking at that as a whole, I think what the court was trying to draw attention to were the concern about the factors, the personal factors that this appellant had. Well, counsel, let me drill down on Judge Harris's question. When the court announces the special conditions, which I think start on page 141 of the appendix through maybe 145, it announces various conditions and then it interjects the reasons for those conditions. So, for instance, on page 142, it says, you must not use or possess alcohol. And then it goes on with various other restrictions on the defendant that are special conditions. And then toward the bottom of JA 144, it then says, well, here are the reasons for my conditions. It assists probation in reducing the risk of recidivism, providing for the protection of the community, and reducing the risk of harm to third persons. So I think the question is, when the court interjects those rationales for the conditions that it's just announced, is that sufficient? I don't believe, I don't believe that's the intent of the district court in this case. While the court does include those rationales after it imposes those conditions, I think that the court also justifies its sentence when it says, I'm reaching my decision as to the proper sentence. I did consider all those factors set forth in 3553. Right, but I think other than the term of incarceration and the term of supervised release, the conditions of supervised release are a different category. And so the district court provided explanations that were generally about the same for all these different conditions of special release. And I think the question for our court is, is that sufficient? And if so, why is it sufficient? I think even read alone that this explanation is sufficient. It does offer probation a chance in assisting him in reducing recidivism. It does provide protection to the community. But why is that true if he doesn't, why is that true? That doesn't seem self-evident to me if he doesn't have an alcohol problem. Well, and Your Honor, I wish I could recall what was in the PSR about alcoholic anything. He describes himself as a social drinker and there's nothing else in there to suggest that that's not true. Okay, and I appreciate the court's recollection on that. But I do think that even read singularly, this is sufficient to warrant the additional restriction. As it relates to the term of the supervised release, again, unsurprisingly, I think the court imposed that term for a lifetime based on the factors that it reviewed on the record. In this case, the appellant transported a minor that was entrusted to his care across state lines, had sexual intercourse with her, recorded it, photographed her nude using pinhole cameras and distributed images worldwide. And I think that the issue that was most compelling to the court was not extreme psychological harm to the victim or even uncharged conduct. I think the most compelling thing to our district court was the fact that the appellant was in a position of trust. And garnered additional trust. He was a firefighter who met this family through a Make-A-Wish program. He was a school bus driver and he was the roommate to the chief of police. And the court spent a lot of time talking about that trust, that violated trust in reaching its determination. So as part of its individualized assessment of the defendant, the court considered him a menace to society, especially to the most vulnerable in society like the victim in this case. In reaching its sentence, the district court took note of both the individualized characteristics of the defendant and particular offense conduct in this case. Spending, as I mentioned previously, multiple pages of the sentencing transcript devoted to justifying its sentence. And I believe that it needs to be read in whole, not pulling out one sentence at a time. And while you consider the extent of the deviation in making that determination of whether it was appropriate, you must give due deference to the district court's decision that the 3553A factors on a whole justify the extent of the variance that was imposed in this case. We believe the district court properly calculated the guideline range, considered all of those 3553A factors, completed an individualized assessment of the defendant and the facts, and considered the arguments presented and then imposed a sentence of 327 months imprisonment, which it characterized as a variant sentence, not a departure. The district court also stated all of its reasons with specificity in accordance with section 3553C. And the explanation for the sentence was sufficient to allow this court to have meaningful review and to promote the perception of fair sentencing. And we do not believe that the district court committed error in imposing a variant sentence of 327 months or a lifetime term of supervised release. And we'd ask the court to affirm the judgment. So let me ask you, in the PSR, which the district court adopted and assumed then was provided to the defendant well ahead of the hearing, at page 188 of the appendix, or no, page 18 of the appendix, yeah, 188, condition 108 is you must not use or possess alcohol, and then there's a specific justification for that. It will assist the probation officer in reducing the risk of recidivism, et cetera. So is that specific justification for that item, which is then adopted by the district court and provided to the defendant, is that sufficient to explain the condition of supervised release? I believe that it is. When looking at the recommended term of special condition from probation, probation is providing its justification for why it thinks that term is necessary. And the court, when it adopted the PSR, included that in its ruling or in the justification for its sentence. That was part of the court's findings. Counsel, I thought, haven't we held that it's not enough that a condition of probation comes from a standing order or from a PSR? Like the district court actually has to explain rather than just cut and paste from a standing order or a PSR. And I think the PSR case was Ross. Your Honor, I don't recall specifically, Ross, my apologies on that. It's all right. Sitting here today, I don't remember it either. I just have this written down. I know the court does have to provide justification for its sentence. And it can't leave the appellate court guessing as to what the district court's intent was. Just to be totally candid, let me tell you my concern. Just cards on the table. This looks like a really thoughtful and careful sentencing to me. There is a lot of discussion of the offense conduct, the defendant. I really appreciate all of that. I am left with a slight concern that there was just kind of a massive global cut and paste here. And nobody looked too carefully at whether this defendant matched up with all of these conditions. Some of them, it seems self-evident. I don't need much of an explanation for why this person should not be able to groom youngsters. Like, that's fine. But some of them, like the alcohol one, just is not self-evident to me. And I can't find an explanation. And, Your Honor, perhaps if there had been an objection raised by appellant at the time of sentencing, we could have addressed it more thoroughly on the record for the court. But there was no objection raised to the special condition. Or maybe the district court would have just said, Oh, you don't have an alcohol problem, fine, I'll take it out. I mean, that's a possibility for sure. Anything else you want to tell us about today? I think I've placed all of my arguments on the record for the court to the extent that I might have missed anything. I'd ask the court to just rely on our arguments that are set forth in the brief. I thank you for the time to discuss the case. And we'd ask the court to affirm the judgment. All right. Thank you, Ms. Crockett. Mr. Compton, you've got some rebuttal time left. Thank you, Your Honor. Your Honor, I was struck by Judge Harris's statement that this appeared to be a bit of a cut and paste job. And I don't say that, I don't mean to, I agree that it was also a very thoughtful sentencing. And I think this was an egregious case. And I think the court laid that out in its sentencing. But I would refer the court, again, to a recent case that was, again, from the Northern District of West Virginia, Judge Groh. That was, we brought here the Himmelreich case. It's the exact same. The conditions, the explanation for the supervising police. Mr. Compton? Yes, Your Honor. I had a question along those lines. We've been talking about a particular condition and whether it fits your client or not. In your brief, did you make any argument that any of the particular conditions are not suited to your client of the crime? My recollection of the brief was that you just said there wasn't sufficient explanation overall. You never drew our attention to any particular condition. Is that correct? That is correct, Your Honor. And it was a discussion that I had with my colleagues here before we came on this morning. And that goes to, I think, Judge Agee's question before. I think, and this is my fault, that I was just a little bit too generalized and too vague in my argument about the ‑‑ Well, I don't mean, I'm not, I don't at all mean to criticize your briefing. I'm just trying to, you know, sometimes a defendant will say, you know, looking at all the conditions, these two or these three, it's not evident how they relate to my crime, right? Sometimes people will say there's a computer condition, and my crime didn't involve computers. So the judge should have explained that, you know, or I objected and the judge should have explained it more. But I just wanted to clarify that you have not raised any argument about the particular conditions not fitting with your client or the crime or why perhaps drinking too much might cause someone to reoffend. That's correct, Your Honor. Not specifically, but I agree with Judge Harris that an alcohol condition, for example, does not, imposing that condition does not lend itself for an appellate court to look at this, to believe that the district judge gave an individualized assessment when the defendant has no alcohol issue in his background and the facts and circumstances of the case do not indicate that alcohol was used to apply the victim or try and lessen her inhibitions. Do you think that's something district courts could generally, is that something district courts could generally consider when it comes to, you know, the justification given was it makes it easier for probation to make sure that they're not going to reoffend? Is that a general truism that if someone's drinking, they might drink too much and not have control of themselves and be persuaded to slide back into their previous lifestyle? Or is that too generalized? I think that is too generalized, Your Honor, and given the requirements of an individualized assessment, if someone doesn't have an alcohol issue, if someone's case does not specifically involve alcohol, then I think that that is too generalized to be considered as an individualized assessment. Alcohol is one of them. I know the district court did not have the benefit of the appellate courts, the Fourth Circuit's rulings in Hamilton and Ellis when making, for example, when imposing the employment and the pornography and the Internet conditions. And I did not raise those specifically in the brief, so I won't present them here. The problem, it seems like to me, in a lot of these recent supervised release cases is that you've had these conditions that have been routinely approved for decades, and now we've had some appellate decisions where the appellate judges come back and pick out on their own conditions that maybe they would have raised had they been counsel in the district court. And I think it's left the district courts in a state of total confusion about how they're supposed to conduct the sentencing hearing without going into a 30- or 40- or 50-page minute explanation for a lot of conditions that seem almost common sense and to which a defendant has never raised a question. I mean, it just puts the district court in an extremely difficult position where it would seem common sense would say that if it imposes a condition and the defendant doesn't say, I have a problem with this, it doesn't apply in my case, that the district court is still supposed to enter into some sort of extended discussion, item by item, that could go on for hours. Well, Your Honor, I respectfully disagree. I don't think the court has to go into an hours-long discussion. I agree with, I think, what the court was, Your Honor, was saying before about, you know, but that doesn't relieve the court, the district court, of making the individualized assessment. And it doesn't mean that the district court has to, as we talked about, I think Arbaugh talks about, robotically tick through. But it has to be clear to the court. It has to be made, I think what Arbaugh says is that the court has to competently be able to state that the district court considered certain arguments. And I don't think we have that here, when the district judge appears to have not given hardly any consideration, but has in fact done, I think what Judge Harris was saying, that in certain circumstances, a cut-and-paste job. I don't know if the court noticed, but I actually made an error in my reply when I cited the, I'm sorry, my time is up, Your Honor. No, go ahead, finish your answer. I made an error in my reply when I was talking about the language that the court used when imposing the sentence on Mr. Williams. I actually cut-and-paste, because the language is almost identical, and I cut-and-paste the Himmelright language by accident, because it's almost identical. I didn't notice. And I'm concerned that that's what happened with the district court here, is that it relied just on, this is how we always do it, this is what gets imposed, whether it's specific to Mr. Williams or not. All right, thank you, Mr. Compton. We appreciate the arguments from both of you today. As you know from prior experience, we would normally be coming down to shake hands, but we can't do that now. But we hope to be back on track in the fall, so hopefully we'll see you sometime in the next court year in person.
judges: G. Steven Agee, Pamela A. Harris, Allison J. Rushing